**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

CHRISTOPHER WILLARD,
         Plaintiff,

 v.              No. 07-CV-1156
                 (NAM/DRH)
C.O. RAMSEY, Auburn Correctional Facility;
and SGT. VANFLEET, Auburn Correctional
Facility,
         Defendants.

---

**APPEARANCES:**         **OF COUNSEL:**

CHRISTOPHER WILLARD
05-A-2161
Plaintiff Pro Se
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York 10562

HON. ANDREW M. CUOMO      MEGAN M. BROWN, ESQ.
New York State Attorney General     Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

 Plaintiff pro se Christopher Willard ("Willard"), an inmate in the custody of the New York

State Department of Correctional Services ("DOCS"), brings this action pursuant to 42

U.S.C. § 1983 alleging that defendants, two DOCS employees, violated his constitutional

rights under the Eighth and Fourteenth Amendments. Compl. (Dkt. No. 1). Presently

---

   [1]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. Dkt. No. 30. Willard opposes the motion. Dkt. No. 32.[2] For the following reasons, it is recommended that defendants' motion be granted.

### I. Background

The facts are related herein in the light most favorable to Willard as the non-moving party. See Subsection II(A) infra.

On the morning of May 21, 2007, Willard was awaken by non-parties Vandecour and Hesse, who conducted a search of his cell for a stolen tape recorder. Willard Dep. (Dkt. No. 30-5) at 13-14. The search was unsuccessful and Vandecour and Hesse escorted Willard to the officers' break room where he was questioned further by defendant Ramsey. Willard Dep. at 14-16. After Willard denied knowledge of the stolen tape recorder, Ramsey assaulted Willard by slapping him twice, punching him in the stomach twice, and choking him. Willard Dep. at 19-28. The assault apparently left no physical marks but caused Willard soreness, pain, and an occasional eye twitch. Id. at 23, 26, 28-29, 56. Willard also suffered depression and nightmares. Id. at 57. Additionally, during the course of the assault, Ramsey verbally threatened to break Willard's nose and plant an illegal weapon in his cell. Id. at 32. Neither threat ever materialized. Id.[3] Willard never was issued a

---

[2] In Willard's opposition he states that his First, Fifth, Eighth, and Fourteenth Amendment rights have been violated. Dkt. No. 32-1. However, inspection of his complaint reveals no cognizable First or Fifth Amendment claims and such claims will not be further addressed.

[3] Allegations of verbal harassment alone are not actionable under § 1983. See Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir. 1996) ("The claim that a prison guard called Purcell names also did not allege any appreciable injury and was properly

2

misbehavior report for the alleged incidents which occurred on or around May 21st. Ramsey Decl. (Dkt. No. 30-15) ¶ 8; Willard Dep. at 37-38.

Willard sought medical attention but never went to the infirmary or was called for sick call. Willard Dep. at 29-30. Additionally, Willard made requests for mental health services which he failed to receive until he was transferred to a different correctional facility. Id. at 58. Willard was eventually diagnosed with post-traumatic stress disorder (PTSD). Id. at 66-67.

When Willard finally received treatment, sometime weeks after the altercation, he never reported the assault to medical staff. Willard Dep. at 31. Defendants indicate that if Willard was involved in a physical altercation, he would have been taken to the infirmary for a check-up pursuant to internal policy and to protect the corrections officer from a law suit. Ramsey Decl. ¶¶ 8-10; Hesse Decl. (Dkt. No. 30-18) ¶ 8. Willard's medical records indicate that, the day following the altercation, he was seen on sick call requesting over the counter medication for acne, athlete's foot, and occasional headaches. Dkt. No. 30-7 at 2; Dkt. No. 32-2 at 10. Nothing was subjectively or objectively noted about injuries from an altercation. Willard sought no further treatment until September. Id. Vandecour and Hesse were present for the entire assault and failed to intervene. Willard Dep. at 23-24, 26, 28, 33.[4]

After the assault, Willard was transferred to the D-block. Willard Dep. at 34-35. Willard "was not placed on Keeplock status[5] but was placed on investigation status for three days

---

dismissed.").

[4]Hesse contends otherwise. Hesse Decl. ¶¶ 3, 6, 11.

[5]"Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities." Green v. Bauvi, 46

3

by the area S[argent] and moved to [the D-block] for his protection." Dkt. No. 30-11 at 2; Dkt. No. 32-2 at 2. Willard remained segregated in the D-block under investigation status for a total of eleven days. Willard Dep. at 41-43. During that time, Willard was denied the opportunities to shower or go to recreation, although he always received his meals. Id. at 39-40. Defendant VanFleet's subsequent investigation of Willard's segregation revealed that during those eleven days, (1) Willard refused recreation the first two days he was confined and thus was not offered a shower, (Dkt. No. 30-14 at 7, 10); (2) the third day Willard received both recreation and a shower, (Dkt. No. 30-14 at 12); (3) the fourth day he was not offered either recreation or a shower, (Dkt. No. 30-14 at 15); (4) the eighth day Willard appeared to refuse both recreation and a shower, (Dkt. No. 30-14 at 21); (5) the ninth day Willard refused both recreation and a shower (Dkt. No. 30-14 at 23); and (6) on the remaining three days, the other log entries failed to establish what occurred. VanFleet Decl. (Dkt. No. 30-9) ¶¶ 21-25.[6] After Willard signed a refusal of protective custody, he was released from isolation in the D-block. Willard Dep. at 43-44. Additionally, after Willard was moved into D-block, he lost his programming work as a porter. Id. at 46.

Shortly thereafter, Willard filed a grievance against Ramsey, detailing the assault and contending that he had been confined without privileges. Dkt. No. 30-10 at 2-3. On June 3, 2007, VanFleet conducted an investigation into the grievance. VanFleet Decl. ¶ 3. Willard

---

F.3d 189, 192 (2d Cir. 1995); N.Y. Comp. Codes R. & Regs. tit. 7, § 301.6 (1995).

[6] The log entries for May 26 and 27 are illegible (Dkt. No. 30-14 at 17, 19), as the pertinent columns were cut off from the area which was photocopied. Similarly, the entry for May 30th omits the column showing whether or not Willard was offered or refused to take a shower. Id. at 26. Lastly, the entry for May 31st does not indicate whether Willard was offered or refused to take a shower. Id. at 29.

was interviewed and complained that he was denied commissary privileges[7] and lost his position as a porter. Id. ¶ 4; see also Dkt. No. 30-11 at 2; Dkt. No. 32-2 at 2.[8] During the interview, Willard said that Ramsey confined him in D-block, but did not assault him, and that the reason he filed the grievance was "because he believed that Officer Ramsey issued him a misbehavior report." VanFleet Decl. ¶¶ 8-9; see also Dkt. No. 30-11 at 2; Dkt. No. 32-2 at 2. Willard denies this statement. Willard Dep. at 52. Willard could not identify any witnesses to the altercation. VanFleet Decl. ¶ 10; Dkt. No. 30-11 at 2; Dkt. No. 32-2 at 2.[9] VanFleet found no merit to Willard's allegations against Ramsey. VanFleet Decl. ¶ 15; Dkt. No. 30-11 at 2; Dkt. No. 32-2 at 2. Willard disputes the validity of all of the investigatory inferences and conclusions in VanFleet's report. Willard Dep. at 55.

On June 11, 2007, the Superintendent denied Willard's grievance, relying on VanFleet's investigatory conclusions. Dkt. No. 32-2 at 4. Willard appealed the determination, and the appeal was denied, citing VanFleet's investigation. Dkt. No. 32-2 at 5. This action followed.

## II. Discussion

Willard asserts that defendants violated his Eighth Amendment rights by subjecting him

---

[7] Denial of commissary privileges has not been found to implicate a protected liberty interest. See generally Smart v. Goord, 441 F. Supp. 2d 631, 640 (S.D.N.Y. 2006) (holding that thirty days' loss of packages, commissary, and phone privileges does not represent an atypical or significant hardship under Sandin or New York State law).

[8] The denial of commissary privileges was vacated shortly thereafter by VanFleet. VanFleet Decl. ¶ 14.

[9] Willard's grievance did not name the two corrections officers that arrived at his cell to escort him to the officers' break room. Dkt. No. 30-10 at 2. Willard testified that he learned the names of the officers a few weeks afterwards when he encountered them and noted the name on their name badges. Willard Dep. at 50.

5

to excessive force. Additionally, Willard contends that his due process rights were violated when he was confined in segregation for ten days, false information was included in VanFleet's internal investigation, and he lost his position as a porter. Defendants contend that (1) Willard's alleged constitutional claims are meritless, (2) there is no federal subject matter jurisdiction over his state law intentional tort claims, and (3) defendants are entitled to qualified immunity.

### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994);

Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir.2006); see also Sealed Plaintiff v. Sealed Defendant # 1, 537 F.3d 185, 191-92 (2d Cir.2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, ... a court is obliged to construe his pleadings liberally.' " (citations omitted)). However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247-48.

### B. Eighth Amendment[10]

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. Inmates enjoy an Eighth Amendment protection against the use of excessive force and may recover damages for its violation under § 1983. Hudson v. McMillian, 503 U.S. 1, 9-10 (1992). The Eighth Amendment's prohibition against

---

[10] To the extent Willard alleges that his Eighth Amendment rights were violated by his conditions of confinement while segregated, such claims are meritless. While Willard contends that he was deprived of showers and recreation, such claims are contradicted by the record which establishes that Willard was offered such activities and he refused to participate in them on numerous occasions. Willard's access to, and refusal to accept, showers were the result of his own decisions and not unconstitutional conditions of confinement. The same is true of his recreational time. Moreover, Willard admits to at least taking one shower part way through his confinement. "Nowhere has it been held that prisoners are entitled to complete and unfettered access to water or showers." Beckford v. Portuondo, 151 F. Supp. 2d 204, 211 (N.D.N.Y. 2001) (citations omitted); see also Cosby v. Purkett, 782 F. Supp. 1324, 1329 (E.D. Mo. 1992) (holding that access to showers every seventy-two hours is not a violation under the Eighth Amendment).

7

cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain." Gregg v. Georgia, 428 U.S. 153, 173 (1976); Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000). To bring a claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements. Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999).

The objective element is "responsive to contemporary standards of decency" and requires a showing that "the injury actually inflicted is sufficiently serious to warrant Eighth Amendment protection." Hudson, 503 U.S. at 9 (internal citations omitted); Blyden, 186 F.3d at 262. However, "the malicious use of force to cause harm constitute[s] [an] Eighth Amendment violation per se" regardless of the seriousness of the injuries. Blyden, 186 F.3d at 263 (citing Hudson, 503 U.S. at 9). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson, 503 U.S. at 9-10 (citations omitted). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" Sims, 230 F.3d at 22 (citation omitted).

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." Id. at 21 (citation omitted). The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Id. (quoting Hudson, 503 U.S. at 7). In determining whether defendants acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: "the extent of the injury and the mental state of the defendant[;] . . . the need for the application of force; the

8

correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response." Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotation marks and citations omitted).

   In this case, even construing the facts in the light most favorable to Willard, he fails to satisfy the first prong of the Eighth Amendment analysis. Ramsey's alleged assault resulted in nothing more than conclusory allegations of harm by Willard. There was no medical record of an assault. Willard's contradictory testimony on whether or not he received treatment is belied by his own ambulatory health record which shows that the day following the assault he was seen by medical personnel. There are no subjective complaints or objective notations of any injuries to Willard's face, neck or stomach. Additionally, the pain reliever that was requested was for occasional headaches, and not pain due to a recent trauma. As such, there is no material upon which to raise a question of fact about the objective seriousness of Willard's injuries, as for all intensive purposes they were non-existent. See Phelps v. Szubinski, 577 F. Supp. 2d 650, 663 (E.D.N.Y. 2008) (granting motion for summary judgment where excessive force claim was "based on mere speculation [and] conclusory allegations" and there was "no demonstrable physical injury" resulting from the officer's actions); Anderson v. Sullivan, 702 F. Supp. 424, 426-27 (S.D.N.Y. 1988) (granting summary judgment where inmate had no medically determinable injuries after being pushed into a bar while being restrained). Moreover, there are no mental health records which can corroborate Willard's alleged treatment or diagnosis of

9

post-traumatic stress disorder.[11] As Willard has failed to establish the objective prong of the analysis, the subjective prong need not be addressed. See Santiago v. C.O. Campisi Shield No. 4592, 91 F. Supp. 2d 665, 675 (S.D.N.Y. 2000) (holding that because "the objective element of the excessive force standard [could not be satisfied], defendants [we]re entitled to summary judgment on the § 1983 claim.").

Accordingly, defendants' motion for summary judgment should be granted as to this claim.

### C. Due Process

Willard claims that defendants denied him due process by separating him in administrative confinement for eleven days, relying upon a faulty investigation in denying his grievance, and precluding his further employment as a porter.

As a threshold matter, an inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property. See Perry v. McDonald, 280 F.3d 159, 173 (2d Cir. 2001). To establish a protected liberty interest, a prisoner must satisfy the standard set forth in Sandin v. Conner, 515 U.S. 472, 483-84 (1995). This standard requires a prisoner to establish that the deprivation was atypical and

---

[11] It should also be noted that, even crediting Willard's contentions of psychological injury, he is precluded from receiving damages for such injuries without the showing of a physical injury. See 42 U.S.C. § 1997e(e) ( "No Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."); Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir. 1999) ("[I]n the case of suits seeking damages for mental or emotional injuries . . . a defendant in a prisoner § 1983 suit may also assert as an affirmative defense the plaintiff's failure to [make a prior showing of a physical injury].").  Therefore, defendants are entitled to judgment as a matter of law.

10

significant in relation to ordinary prison life. Id. at 484; Davis v. Barrett, 576 F.3d 129, 133 (2d Cir. 2009); Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir.1999); Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir.1996).

### 1. Administrative Confinement

The fact that an inmate has been disciplined with a SHU confinement alone is insufficient to establish an atypical and significant deprivation. While, in this case, Willard was not confined pending a disciplinary investigation, the fact remains that he was still segregated from the population for eleven days.

The Second Circuit has articulated a two-part test whereby the length of time a prisoner was held in SHU as well as "the conditions of the prisoner's confinement in SHU relative to the conditions of the general prison population" are to be considered. Davis, 576 F.3d at 133-34; Vasquez v. Coughlin, 2 F. Supp. 2d 255, 259 (N.D.N.Y.1998) (citing Brooks v. DiFasi, 112 F.3d 46, 49 (2d Cir.1997)). The Second Circuit has noted that where the period of confinement exceeds thirty days, "refined fact-finding" is required to resolve defendants' claims under Sandin. Colon v. Howard, 215 F.3d 227, 230 (2d Cir. 2000); see also Davis, 576 F.3d at 134-35 (finding questions of fact and insufficient record to grant defendants' summary judgment under Sandin where plaintiff spent sixty days in SHU). Since Willard was only confined for eleven days, his segregation is insufficient to trigger a liberty interest.

Accordingly, defendants' motion for summary judgment should be granted on this ground.[12]

---

[12] To the extent that Willard claims he was not provided with adequate notice of his segregation, such claims are meritless as his short duration of isolation failed to trigger a

11

## 2. Grievance Investigation

Additionally, Willard's contentions that he was denied a proper investigation into his grievance are also without merit. A "corrections officers' failure to properly address . . . grievances by conducting a thorough investigation . . . does not create a cause of action for denial of due process because . . . [p]rison grievance procedures do not confer any substantive right upon an inmate requiring the procedural protections envisioned by the Fourteenth Amendment." Torres v. Mazzuca, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) (citations omitted). Therefore, even accepting Willard's allegations as true and assuming that Van Fleet issued a false investigative report, Willard has no substantive rights in a grievance investigation and no expectation of procedural protections in such an investigation.

Therefore, as a matter of law, defendants' motion for summary judgment on this ground should be granted.

## 3. Continued Prison Employment

With respect to Willard's claims that loss of his prison employment triggered due process protections, such contentions are untenable. It has been held, both by the Second Circuit and many other sister circuits, that prisoners do not have a constitutionally protected property interest in a certain employment or in continued employment. See Johnson v.

---

liberty interest requiring due process protections. See generally Valmonte v. Bane, 18 F.3d 992, 998 (2d Cir. 1994) ("[P]rocedural due process questions [are analyzed] in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.") (citing Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989)).

Rowley, 569 F.3d 40, 43-44 (2d Cir. 2009); see also Bulger v. United States Bureau of Prisons, 65 F.3d 48, 50 (5th Cir. 1995) (finding that termination and reassignment to a different job within the prison setting is neither atypical nor significant in relation to ordinary prison life); Newsom v. Norris, 888 F.2d 371, 374 (6th Cir. 1989) (holding that "the Constitution does not create a property or liberty interest in prison employment and that any such interest must be created by state law by language of an unmistakably mandatory character.") (citations and quotations omitted); Karacsonyi v. Radloff, 885 F. Supp. 368, 370 (N.D.N.Y. 1995) ("Prison officials, however, have broad discretion in denying federal inmates the opportunity to [work].") (citations omitted). Additionally, the Second Circuit has held that a "New York [state] . . . prisoner has no protected liberty interest in a particular job assignment." Frazier v. Coughlin, 81 F.3d 313, 318 (2d Cir. 1996). Accordingly, as a matter of law, Willard has no liberty interest in his initial, or continued, employment as a porter.

Therefore, defendants' motion on this ground should be granted.

### C. Qualified Immunity

Defendants claim that even if Willard's constitutional claims are substantiated, they are entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003). However, even if the constitutional privileges "are clearly established, a government actor may still be shielded by

13

qualified immunity if it was objectively reasonable for the . . . official to believe that his [or her] acts did not violate those rights." Smith v. City of Albany, No. 03-CV-1157, 2006 WL 839525 *16 (N.D.N.Y. Mar. 27, 2006) (quoting Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights, of which a reasonable person would have known, were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230. Here, the second prong of the inquiry need not be reached concerning Willard's claims because, as discussed supra, accepting all of Willard's allegations as true, he has not shown that defendants violated his constitutional rights.

Accordingly, in the alternative, defendants' motion should be granted on this ground.

### D. State Law Claims[13]

In his complaint, Willard also alleges causes of action for assault, reprisal, libel, and slander based on New York state law. Federal courts have supplemental jurisdiction over such pendent state law claims pursuant to 28 U.S.C. § 1367. It is recommended herein,

---

[13] Defendants' counsel relies on N.Y. Correct. Law § 24 for the proposition that state courts have no jurisdiction over such tort claims and therefore supplemental jurisdiction is inappropriate. However, such contentions are without merit as the Supreme Court recently held the New York State law unconstitutional as it violated the Supremacy Clause. Haywood v. Drown, 129 S.Ct. 2108, 2118 (2009).

however, that defendants be granted judgment on Willard's federal claims on which rests federal jurisdiction over the pendent state law claims. Willard asserts no other basis for the Court's jurisdiction over these claims and, therefore, the Court should declines to exercise supplemental jurisdiction over Willard's state law claims if the recommendations herein are accepted. See 28 U.S.C. § 1367(c)(3); see also Quigley v. City of Syracuse, No. 5:03-CV-1198 (NAM/DEP), 2006 WL 2827884, at *15 (N.D.N.Y. Sept. 29, 2006). Accordingly, such causes of action should be dismissed without prejudice.

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for summary judgment (Dkt. No. 30) be **GRANTED** and that judgment be granted to both defendants on all claims; and

**IT IS FURTHER RECOMMENDED** that Willard's state law tort claims be **DISMISSED WITHOUT PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: February 9, 2010
       Albany, New York

_____
David R. Homer
U.S. Magistrate Judge